STATE OF MISSOURI *ex rel.* DAVID NICHOLSON, Relator, *v.*
R. E. ROMBAUER, Respondent.

1. *Practice, Civil—Verdict—Where responsive, etc., refusal by court to receive improper.*—After a jury have pronounced their verdict, the court may, before receiving it, request them to retire and reconsider; and in such case they may change or adhere to their verdict, at their option. But where the verdict is sensible, consistent, and responsive to the issues, the court can not absolutely and finally reject and refuse to record the same, even though it be clearly against the evidence, and contrary to the law as laid down by the court. The statute (Gen. Stat. 1865, ch. 172, § 3) has made ample provision, by motion for new trial, for rectifying errors in verdicts, and preventing injustice or mistakes on the part of juries.

*Petition for mandamus.*

*Strong,* for relator.

I. A verdict responsive to the issues should be received and recorded. (State v. Ostrander, 30 Mo. 13; State v. Schoenwald, 31 Mo. 155, 158; State v. Arrington, 3 Murphy, 571; Moody v. McDonald, 4 Cal. 297; Russell v. Wheeler, 1 Hemp. 3.) An unintelligible verdict may be set aside on motion. (Ford v. Ford, 3 Wis. 399.)

II. *Mandamus* is a proper remedy in this case. (Pratte v. Cabanne, 12 Mo. 194; Boyce's Adm'r v. Smith's Adm'r, 16 Mo. 317; Leahy v. Dugdale, 41 Mo. 517.)

III. A verdict will not be set aside when it is according to the law and evidence, properly understood, even though it may be contrary to the instructions given by the court. (Van Vacter v. Brewster *et al.*, 1 Sm. & M. 410.)

IV. A verdict which the court can understand, is good, though it may be informal. (Jones v. Julian, 12 Ind. 274.)

V. A verdict can not be amended by the court in matters of substance. (Wallace v. Hilliard, 7 Wis. 627.)

*Lackland, Martin & Lackland,* for respondent.

I. *Mandamus* will lie only where the act to be done is purely ministerial, and nothing like judgment or discretion in its performance is left to the officer. (United States v. Guthrie, 17

How. 284; 12 Peters, 524; 14 Peters, 497; 6 How. 92; 1 Manning, 359; 23 Mo. 499; 19 Johns. 259; 5 Ohio, 529; 8 Ind. 345; 14 Ohio, 322; Tapping on Mandamus, 65; The King v. The Justices of Monmouth, 7 Dowl. & Ryl. 334.) The superior court examines into the proceedings to see if the act is within the discretion of the judge, and no further. It can not restrain or control that discretion. (Commonwealth v. Justices of the Court of Sessions, 5 Mass. 437; Meacham v. Austin, 5 Day, 233.)

II. *Mandamus* will not issue to obtain the opinion of this court upon a matter of law. It is an extraordinary remedy for the purpose of justice alone. (Tapping on Mandamus; Williams v. Judge of Cooper County Court, 27 Mo. 225, and authorities there cited.)

III. The entry of the verdict would be of no avail to the relator, and therefore this court will not order it to be done. (Commonwealth v. Commissioners of Lancaster County, 6 Binney, 5; Dodd v. Miller, 14 Ind. 433; Tapping on Mandamus, 67; 8 Ind. 345.)

IV. *Mandamus* will not be awarded in any case admitting of another legal remedy, as, in this case, by appeal. (*Ex parte* Goolsby, 2 Grattan, 575; People v. Judge of Branch Circuit Court, 1 Doug. 319; Williams v. Judge of Cooper County, 27 Mo. 225; 6 Iowa, 456.)

V. *Mandamus* will issue only where the relator has a clear and undoubted right to have the act performed. (Williams v. Judge of Cooper County, 27 Mo. 225; Tapping on Mandamus, 65; People v. Hatch, 33 Ill. 9, 123; Morris v. Ten Eyck, 2 N. Y. Leg. Obs. 9; 11 Iowa, 505; 14 Iowa, 501; 2 Barb. 566; 5 Mass. 437; 5 Day, 233; 10 Mich. 14, 263; 37 Barb. 343; *Ex parte* Bassett, 2 Cow. 458; Proprietors of Kennebeck Toll Bridge, petitioners, 2 Fairfield, 263; Commonwealth v. Justices of the Court of Sessions, 5 Mass. 437; Bacot v. Keith, 2 Bay, 466.)

VI. Courts have control over verdicts, and may set them aside or refuse to receive them when they are contrary to law or against the evidence. (Commonwealth v. Justices of Court of Sessions,

5 Mass. 437; *Ex parte* Bassett, 2 Cow. 458; Morris v. Ten Eyck, 2 N. Y. Leg. Obs. 9; Proprietors of Kennebeck Toll Bridge, petitioners, 2 Fairfield, 263; Walker v. Smith, 1 Washb. 202; Bryant v. Com. Ins. Co., 13 Pick. 543; 2 Bay, 466; McGrath v. Lorton, 2 McCord, 26; Bell v. Hutchinson, *id.* 409.)

WAGNER, Judge, delivered the opinion of the court.

The relator prays this court to grant a peremptory writ of *mandamus* against the respondent, who is one of the judges of the St. Louis Circuit Court, to compel him to receive and record a verdict rendered by a jury.

It appears that a suit was instituted in the Circuit Court by one McDonough against the relator, claiming damages for injuries sustained in consequence of a wall giving way and falling. After the evidence was submitted and instructions given by the court, the jury retired to consider of their verdict, and, upon consultation thereon, returned with the following: "We, the jury, find for the plaintiff, and assess his damages at one dollar and costs." [Signed] "L. Leming, foreman." This the court refused to receive, because it was deemed contrary to the evidence and law as given by the court. The jury again retired in obedience to the orders of the court, and, after some time spent in further consultation, failed to agree upon any other verdict, and were accordingly discharged.

The question is, whether the Circuit Court, of its own mere motion, has the right to reject a verdict, and refuse to have it recorded, because it is considered as contrary to the evidence and against the law. It must be conceded that the practice is unusual, and not in consonance with the usual course adopted in this State, where the verdict is against the law and the evidence.

The uniform mode which has always prevailed in this State, where the verdict is sensible, consistent, and responsive to the issue, is to receive and record it, and then to set it aside on motion and grant a new trial, where it is against the instructions of the court, or not sustained by the evidence. Where a verdict of a jury is merely informal, the court may put it in proper form. (Henley v. Arbuckle, 13 Mo. 209.) A substantial omission in

the verdict of a jury may be supplied by the court, with their consent, so as to make it conform to their intention; or. the jury may change their verdict, if they find they have made a mistake, at any time before it is finally received by the court.

In England, in an early period, when the courts to a great extent controlled the verdict of juries, it was the common practice, where the court considered the verdict manifestly against the evidence, before the verdict was recorded, but not after, to send the jury back and make them reconsider the case. This practice has prevailed to a certain degree in some of the American States, where the English practice permitting the court to advise the jury, by orally commenting on and summing up, has been adhered to.

In Blackley v. Sheldon, 7 Johns. 32, the action was trover, to which the defendants pleaded not guilty, and there was a trial before a jury. The jury having agreed on their verdict, returned into court and delivered the same in writing, by which they found for the defendant. The court, without publishing their verdict or making it known, informed the jury that, in its opinion, they had mistaken the evidence, and requested them to reconsider their verdict. The jury retired, and soon after requested to have a witness re-examined, and the witness was re-examined in the presence of both parties, and without objection by either. The jury then brought in a verdict in writing in favor of the plaintiff, on which judgment was given. The Supreme Court sustained the proceeding, and said that the law was well settled that before a verdict was recorded, the jury might vary from the first offer of their verdict, and the verdict which was recorded should stand, and that there were many cases in the books of a jury changing their verdict immediately after they had pronounced it in open court, and before it was received and entered. The court then refers to the old English authorities. (Dyer, 204; Plowd, 209; Saunders v. Freeman, Co. Litt. 227, note *b*.)

But the ground on which the decision is based is clearly exhibited in the concluding paragraphs of the opinion. "If the verdict be delivered in writing, as it was here, the justice had a right to permit the verdict to be taken by the poll, and the jury had a right to vary from their first finding. They had a right to retire

and reconsider, and all that the justice did in this case was to request the jury to reconsider their verdict. They might have refused to reconsider, and have insisted upon adhering to their first verdict, but they consented to reconsider. It was their voluntary act, and one which they had a right to do. There was nothing, then, erroneous in the conduct of the justice. The verdict received and recorded was the only one to be regarded, and, consequently, the judgment below ought to be affirmed."

In that case, it will be perceived, there was no rejection of, and no absolute refusal to receive, the verdict, but a simple request to reconsider, as the justice supposed the jury had mistaken the evidence, which turned out to be true. And the court says it was discretionary with the jury to reconsider or not. But had the jury refused to reconsider, and insisted on their first verdict, the implication is that it would have been the duty of the court to receive it, and have it entered of record.

In the case of the State v. Ostrander, 30 Mo. 13, it was adjudged by this court that, if the verdict returned by a jury in a criminal prosecution be sensible and responsive to the issue, it is the duty of the court to receive it and have it recorded, and that the judge could not refuse to receive a verdict returned by the jury, on the ground that it was manifestly against the weight of evidence. That was a criminal case, but the clear and able reasoning of the court equally applies to a civil case. Judge Napton examines the question at length, and refers to the same authorities quoted by the court in Blackley v. Sheldon, and declares them not applicable to our practice.

Our statute has made ample provision for rectifying errors in verdicts and preventing injustice being done by mistakes on the part of juries. It enacts that in every case where there has been a mistake or surprise of a party, his agent or attorney, or a misdirection of the jury by the court, or a mistake by the jury, or a finding contrary to the direction of the court, or a fraud or deceit practiced by one party on the other, or the court is satisfied that perjury or mistake has been committed by a witness, and is also satisfied that an improper verdict or finding was occasioned by any such matters, and that the party has a just cause of action

or defense, it shall, on motion of the proper party, grant a new trial, and, if necessary, permit the pleadings to be amended on such terms as may be just. (Gen. Stat. 1865, ch. 172, § 3.) This section was intended to introduce a uniform rule of practice in regard to the power of courts over the findings and verdicts of juries.

If the jury find contrary to the law as given them by the court, or their verdict is clearly against the evidence, the court has authority, upon motion of the proper party, to set aside the verdict and grant a new trial. The next section of the same chapter declares that only one new trial shall be allowed to either party. But if the court can, of its own motion, refuse to receive a verdict, or reject it entirely, the provision would, in a great degree, be nullified, as the court might award any number of trials, till a jury was obtained who would find the desired verdict. This, plainly, was not the intention of the law. Every lawyer who is engaged in practice knows that juries often find against the evidence, and against the instructions of the court. When such an event happens, the duty of the court is clear to promptly set aside the verdict when a motion is made for that purpose by the aggrieved party.

The bill of exceptions states that, when the jury returned with the verdict, the " court, having asked plaintiff whether he would receive this as a verdict, and the plaintiff refusing to do so, the court refused to receive the verdict or permit it to be entered of record, and thereupon ordered the jury to retire with the papers in the case, and further consider the said cause, which the jury did, and the court, of its motion," gave an additional instruction.

The jury then, after consulting and reconsidering the matter, were unable to agree, and so reported to the court, and were discharged. The jury acted not voluntarily, but by the order and compulsion of the court, and they failed to alter their conclusions and arrive at a new and different verdict.

As to form, the verdict brought in was responsive to the issues. It found for the plaintiff and assessed his damages; it may have been against the weight of evidence, and contrary to the law as laid down by the court. If so, it should have been set aside on

motion, and a new trial ordered, but not summarily rejected. I am of the opinion that the course here pursued would introduce a dangerous practice, and ought not to be approved.

The verdict should be received and entered of record, and the plaintiff may pursue his remedy by resorting to his motion.

Let the writ issue. The other judges concur.