## DAVIS v. COOPER.

### Appeal from the Circuit Court of Warren county.

1. In an action of trespass against an officer it is not necessary to declare against him in his official capacity.

2. Declaration in trespass—plea, that the acts charged &c. were done under the authority of an execution delivered to defendant as deputy sheriff &c. Replication, that plaintiff had paid the full amount of the execution, and that defendant acknowledged full satisfaction of the execution by giving his receipts therefor, &c. Held, that the replication was bad in not avering that plaintiff had paid and satisfied the execution &c. and in not stating how much money he had paid, and further, in not averring that the trespass was committed after the payment of the money due on the execution.

3. But the defendant having withdrawn his demurrer to the replication and the issue joined having been found against him, the defect in the replication is cured by the verdict.

4. Evidence which has a tendency to disprove the facts which the other party is endeavoring to establish is admissible; particulary if such evidence can be drawn from the witness of the other party.

5. An execution and venditioni exponas, are a sufficient justification of a sheriff in an action of trespass against him for levying upon and selling plaintiffs property, but if the sheriff wishes to offer the whole record in evidence there is no good reason why the court should refuse to permit him to do so.

*Wells and Campbell for Appellant.*

1st. The court erred in refusing to permit the defendant to introduce the record of the case of John Davis vs. Spencer Cooper, as evidence to the jury.

2nd. The circuit court erred in refusing to permit the defendant to introduce, as evidence, the execution and writ of venditioni exponas in said cause and the return thereon.

3rd. The circuit court erred in refusing to permit the defendant to introduce evidence to prove his general good conduct and character as deputy sheriff.

4th. The circuit court erred in refusing to permit the defendant to propound to Alexander Cooper two questions proposed and overruled by the court, as saved in the bill of exceptions.

5th. The circuit court erred in refusing to grant a new trial in the cause, for the reasons assigned in defendant's motion.

6th. The circuit court erred in refusing to sustain the motion of defendant in arrest of judgment.

7th. The circuit court erred, in rendering judgment for plaintiff. See Tucker's Commentaries, vol. 2, p. 371. 1st Cranch 136, do do vol. 292, book 3. 1 Robinson's practice 342. See second Starkie, pages 365, 368, 369, note 3rd, Starkie 1744–6–7. 1 Starkie Ev. p. 132. See American digest p. 374, and 346. 1 Mass. T. R. 530. 3 Cranch 307, Hall's digest page 500, Hardin's Rep. page 362, 19th Johns. Rep. 39. Rob. prac. 342.

*Jameson and Dryden for Appellee.*

1st. The plaintiff did not sue defendant as an officer, and that, as an officer he justified his acts as charged.

2nd. He could not make evidence for himself. 7th Johnson's Rep's 426. 15th do. 443.

3rd. The only issue in this cause was the issue on the special replication

4th. The defendant cannot, in action of trespass, or in any other action, unless his character is put directly in issue, go into proof of his general good character. 2nd Starkie, title character, page 2, 214–15–16 and 17, and the notes there referred to.

5th. The court below did not err, in not requiring Alex-ander Cooper to answer the two questions mentioned in the assignment of error.

Opinion of the court delivered by Tompkins Judge.

Cooper brought an action of trespass, in the circuit court of Warren county, against Davis and there obtained a judgment against him, to reverse which Davis prosecutes this appeal. Davis pleaded, first, the general issue, to which the plaintiff replied. 2nd. Davis pleaded that the several acts charged in the declaration to be trespasses were done by him, under the authority of an execution then delivered to him, as deputy sheriff of said county of Warren.— Cooper rejoined, averring that he had paid the full amount of said execution, and that the defendant acknowledged full satisfaction of said execution by giving his receipt therefor, &c. To this rejoinder the defendant demurred and his demurrer being overruled, he withdrew it, and an issue of fact being made up, they proceed to trial. The defendant moved in arrest of judgment and his motion was over ruled. A witness, sister of Cooper the plaintiff in the circuit court, appellee here, states, that on the eleventh day of July in the year 1838, a few days before the commission of the trespass charged in the declaration, that Davis, the appellant, came to the house of the appellee, her brother; he did not come into the house, but spoke to the appellee outside of the house; the appellant had then the execution: the appellee came into the house for his money and went out and he and the appellant were talking together in a passage, at the end of the house; that the witness lay on the bed and looked out of a crack near where they were talking; that the defendant was sitting down, close to the end of the house that the appellee, and plaintiff below, was standing up close to him, that she heard the appellee say "now we are even" and the appellant said "well" and then he went away; she did not see any money paid or received, but she heard money rattling and saw their arms passing backwards and forwards, and she thought that when the appellant went away he was satisfied, as she heard no disturbance or noise; that some time after, on the same day the appellant came back,

with three men; that the appellee met them at the fence, a short distance from the house, where they had some angry talk; which she did not hear. On cross examination, she stated that she looked through the crack because she wanted to see what they were doing, that both the appellee and appellant appeared to be in good humour when they were talking in the passage, that she did not know how much money the plaintiff took out; she had seen it in the chest, but did not count it, that the plaintiff (appellee) and his cousin had counted it some time before, soon after the execution had issued, and that they said there were sixty dollars; that after the appellant went away, the appellee came in with the receipt and read it to her, it was a receipt in full, that the appellee did not say any thing to her about the receipt, and that he did not have any conversation with her on the subject; that she did not inform her brother that she had been looking through the crack, and that there has not been any conversation between them on the subject betwixt that time, and the time when the appellant came back with the three men; that the appellant and appellee were talking together, the first time the appellant came, about an hour and a half; that she was three times at the crack, and might have spent about half an hour there, that they conversed about many things of which she recollected nothing except what was above related. The taking and sale of the property in the declaration mentioned was proved, and the receipt being lost, evidence was given of it, by producing a copy and proving the hand writing of the appellant, it was for forty-one dollars and 98 cents in money, and thirteen dollars and 49 cents in receipts of certain persons, to whom probably costs had been paid by appellee. The appellee then introduced Alexander Cooper, his brother, to prove, that he the appellee was a farmer and had then a crop, and had but one other horse, and that unhealthy, with other circumstances in aggravation of damages; this witness purchased the property. On cross examination, the witness was asked whether the appellee had not furnished him the money to buy this property, and whether the appellee had not requested him to purchase it. These questions the cir-

cuit court decided should not be answered. The appellant then offered in evidence the record of the judgment on which the execution was issued, and under which he acted, but on motion of the appellee it was rejected. He then offered in evidence the execution and venditioni exponas issued in the cause; they were also rejected. On this execution was a special return, that the appellee had paid ten dollars in money and thirteen dollars and 49½ cents in receipts, the same as those mentioned before in the receipt given in evidence by the appellee, and that having written a receipt for the whole sum due on the execution, the appellee got possession of it to see if it was sufficient, and retained it paying only the sum of ten dollars and the receipts as above mentioned. A witness introduced on the part of the appellant, stated that in July 1838, he and two others went with the appellant to the house of the appellee; that at the foot of the field they saw a son of the appellee, who, when he saw them, ran for the house, and was there when they came up; that as they approached the house, they saw the plaintiff come out with his gun, and that he met them at the fence a short distance from the house; that the appellant told the appellee he had come to try to settle that dispute between them; that the appellee got angry, and the appellant told him he wanted the balance of the money due on the execution; the appellee s aid he had paid him all he owed him, and had his receipt for it; that the appellant said he had his receipt but he had only shown it to him and he had kept it, and had paid him only ten dollars; the appellee replied that he had paid him all he owed him; that the appellant then asked him, how much he had paid; but that he did not say, and repeated that he had paid him all he owed him, and said he was going to hunt squirrels; the two other persons testified to the same purpose, with this addition that one of them said it was on the 11th day of July 1838, the day on which the plaintiffs witness had stated it to be. The second of these three witnessess, who were present at the interview betwixt Davis and Cooper, stated that Davis repeatedly asked Cooper to state how much he had paid, but that Cooper did not state how much he had paid, but said he had paid all he ow-

ed, and the receipt would show; that the appellee ordered
the appellant off, cursing him; that the appellant asked him
to show the receipt which was not done; that Cooper stated
he could prove the payment of the money by his sister, who
had been lying on the bed and looking through a crack, and
had seen him pay the money. Other angry and idle words
were said to have been spoken by the appellee. One of
these witnessess states that he and another went next day
to Cooper's house, at Davis' request, and saw a crack about
an inch and a half wide apparently newly made. Several
witnesses, introduced by the appellant, testified that they
had heard Cooper say that the judgment should never do
John Davis, the plaintiff in that judgment, any good; and
one stated that he had said, he would pay it to Hay's the
sheriff, but not to James Davis his deputy. Davis offered
evidence of his character, which the circuit court refused to
admit. The defendant moved for a new trial, because; first
the verdict was against law and evidence. 2nd. The court
refused to admit the defendant to introduce proper and le-
gal evidence. It may be proper here to observe that excep-
tions were taken to the decision of the court in refusing to
admit the evidence offered by the defendant. The reasons
in arrest of judgment are, 1st. The declaration was bad.
2nd. The replication to the plaintiff's second plea was bad.
The appellant contends that the judgment ought to be
arrested.

1st. Because the declaration should have been against him
as deputy sheriff. In the total abscence of books to furnish
authority, I am reduced to the necessity of depending on
my own recollections of the rules of pleading. I can see
no reason why the plaintiff in an action should be constrain-
ed to sue any man in his official character. To me it seems
most proper for the defendant to allege this in his plea if he
thinks it will help his case, he best knows whether he is
an officer, and whether he acts under the authority of a
writ.

In an action of trespass against an officer it is not necessary to declare against him in his official capacity.

2nd. Because the replication to the record plea was bad:
That replication, he says, should have stated what sum of
money he paid in satisfaction of the execution. It does not

OCTOBER TERM 1839.

Davis vs, Cooper.

*Declaration in trespass— plea, that the acts charged &c were done under the authority of an execution delivered to defendant as deputy sheriff, &c. Replication, that plaintiff had paid the full amount of the execution and that defendant acknowledged full satisfaction of the execution by giving his receipt therefor &c. Held, that the replication was bad in not averring that plaintiff had paid and satisfied the execution, &c. and in not stating how much money he had paid, and further, in not averring that the trespass was committed after the payment of the money due on the execution. But the defendant having withdrawn his demurrer to the replication & the issue join-*

admit the authority under which the defendant acted nor charge that the several trespasses were committed without the reason assigned by the defendant. It will here be recollected that the appellant demurred to this replication, and when the circuit overruled his demurrer, he withdrew it.— Had he abided by his demurrer and caused a judgment to be entered up against himself then in that case, I should have had no difficulty in saying that the replication was bad.— Reason seems to require that the appellee should state in such a plea that he had paid and satisfied the execution &c. and I believe he also should have stated how much money he had paid. He should also have stated in his replication that the said trespass in the declaration mentioned had been committed after the payment of the money due on such execution. But the appellant withdrew his demurrer, and made an issue which was found against him. Many things, good on demurrer, are cured by verdict. Without the aid of authority I am not willing to say that the circuit court committed any error in refusing to arrest the judgment for this reason. The appellants counsel has cited authority enough, but as he has not put them in my reach, it avails me nothing. The next point is the rejection of the testimony offered to be introduced by the appellant. The decision of the court, by which the appellant was refused the right of asking Cooper whether the appellee did not furnish him money to buy the property sold on execution and which was the subject matter of this suit, comes first in order. Coopt er had testified for the appellee that he had a growing crop, and but one other horse and that unsound, as well as other things in aggravation of damages. It certainly then was quite reasonable to allow the other party to introduce evidence to disprove the facts the other party was striving to establish, and what witness could be less objectionable than the appellee's own witness and brother. If the appellee had money enough to purchase the horse and cow sold under the execution, then he would not have a right to claim such aggravated damages. If he had desired the witness to purchase for him, it would be still stronger evidence that he was not unwilling to have them sold, and might have raised

in the minds of the jury a presumption that he did furnish the money. Even if the witness had denied it, it might have been material in another view to the appellant to prove that the appellee furnished the money to buy this property. His sister had testified, that, some short time after this execution issued, the appellee and his cousin had counted his money which she had seen in a trunk, she did not know the amount, but they said that the sum was sixty dollars. It will be recollected that he depended on the receipt to prove the payment of the money due on the execution. Had it been proved that the appellee furnished his brother money to buy this property, this circumstance might have induced a jury to believe that the appellee did not pay the sum of forty-one dollars to the appellant, but that he fraudulently took possession of the receipt for that sum of money, as the appellant contends he did. The questions put by the appellant, ought in my opinion to have been answered, for the two reasons above given, and the circuit court, in my opinion, committed error in disallowing them to be answered. The next question that occurs is, as to the record of the judgment &c. on which the execution issued. In the 27th section of the 3rd article of the act to regulate practice at law page 460 of the digest, an officer, like the appellant, is permitted to plead the general issue and give the special matter in evidence. The execution and the venditioni exponas were enough for him, but if he chose to offer the whole record, I can see no reason why the court should reject it even under the special plea; more especially as the appellee did not, in his replication to that plea, admit the official character of the appellant. The dates in this record might have been material, as was contended by the appellants counsel. Miss Cooper a witness of the appellee, stated that soon after the execution was issued, the appellee and his cousin had counted his money and found there were sixty dollars. By the endorsement on this execution, it appears to have come to the hands of the sheriff on the 9th of April proceeding the time of the date of the receipts, and it certainly might have been a fair subject matter of enquiry before the jury, whether a man in the circumstances of the appellee, might

OCTOBER TERM 1839.

Davis
vs
Cooper.

ed having been found against him, the defect in the replication is cured by the verdict.

Evidence which has a tendency to disprove the facts which the other party is endeavoring to establish is admissible, particularly if such evidence can be drawn from the witness of the other party.

An execution and venditioni exponas, are a sufficient justification of a sheriff in an action of tres pass against him for levying upon and selling plaintiff's property but if the sheriff wishes to offer the whole record in evidence there is no good reason why the court should refuse to permit him to do so.

be presumed to be able to raise sixty dollars, to buy the pro-
perty sold on execution, after paying the money for which
that receipt purported to have been given. The evidence
offered by the appellant to prove his good character was
well rejected; for his character was not in issue: but in re-
fusing to admit the record to be read, the circuit court, in
my opinion, committed error. If the possession of a receipt
signed by the appellant be evidence that the appellee who
possessed it has paid money to the appellant, the execution,
returned not satisfied, is certainly better evidence that the
money due thereon has not been paid, for the officer returns
the execution under the obligations of his official oath; and
at the risk of an action for a false return, and it will here be
recollected that the evidence of the payment of money by
him is very slight; his sister saw their arms passing, as she
peeped through a crack, and heard money rattle, this is all
the evidence except the possession of the receipt. I con-
clude then that the record ought to have been read in evi-
dence. This brings me to the enquiry whether a new trial
ought to have been granted. The evidence of the payment
of money by the appellee is certainly very slight, as above
observed, and indeed it carries along with it a character of
evil appearance. The sister of the plaintiff states that her
brother came into the house, after Davis went away and
read the receipt to her, it was a receipt in full, no conversa-
tion passed betwixt them, and that she did not tell him she
had been looking through the crack and saw the money
paid: when Davis promptly returned, on the same day,
with three of his neighbors, Cooper, apparently informed
of their coming, takes his gun and meets them at the fence,
a short distance from the house, and angry words pass,
which his sister did not understand; three of the other wit-
nesses testify to a degree of bitterness in the language of
the appellee, which could not reasonably be expected from
him, had he and Davis parted in good humor, an hour or two
before that time, he knows too that his sister had been look-
ing through the crack, and saw him pay the money, al-
though she testified that she had not then told him, but it is
said he might have seen her. If he could have seen her, the

other might equally have seen her. The whole account of looking through the crack for half an hour, exposed probably to a stranger's view, to hear a conversation of good humor, and which was yet so uninteresting that the curious witness could recollect nothing but the few words above mentioned, viz: "well now we are even" and the appellants answer "well." appears to me to be too strange to be credible; other witnesses, whose testsmony has been adverted to, state that the appellee had in their hearing declared that he would never pay the judgment, and that the money, should never do the plaintiff in the execution any good. This testimony, considered as a whole, appears to me to have been sufficient to induce a jury to find a verdict for the appellant; and the court ought in my opinion to have granted a new trial on that account, because then the circuit court, refused leave to the appellant to put the questions above mentioned to the witness, Cooper, and because that court did not permit the appellant, to give in evidence the execution and venditioni exponas, with so much of his return thereon as was properly made, (for I do not recollect that he had any right to return on the execution that the defendant unlawfully got possession of his receipt,) and also the record, on which that execution was issued, and also because that court did not grant a new trial to the appellant, its judgment ought in my opinion to be reversed. It being the opinion also of the other judges of this court that the judgment ought to be reversed, it is accordingly reversed, and the cause will be remanded to the circuit court.